SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
-----------------------------------------------------------------X
GRETCHEN BAILEY,

                                Index No. _____

*Plaintiff*,

--against--                              **VERIFIED COMPLAINT**

ELLICOTT DEVELOPMENT OF BUFFALO, LLC,
ELLICOTT DEVELOPMENT COMPANY,
10 ELLICOTT SQUARE COURT CORPORATION,
WILLIAM PALADINO,
and CARL PALADINO,

                    *Defendants*.
-----------------------------------------------------------------X

Plaintiff, GRETCHEN BAILEY, by and through her attorney, THE LAW OFFICE OF LINDY KORN PLLC, hereby complains of the acts and omissions of the Defendants as follows:

## NATURE OF THE CLAIMS

Plaintiff seeks the appropriate remedies and damages for discriminatory treatment based on sex, sexual harassment, retaliation, and hostile work environment in violation of New York Executive Law §296, together with claims under the corresponding federal statutes as enumerated in Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Equal Protection Act.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to New York Civil Practice Law and New York Executive Law, Article 15, §296 and pursuant to 28 U.S.C. §1331 this Court has

jurisdiction over claims arising under 42 U.S.C. §12117 , 29 U.S.C. § 206(d), and 42 U.S.C. §2000 *et seq*.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 and based upon Plaintiff's residency within the County of Erie, Defendants are located in the County of Erie, and the acts or omissions giving rise to the Plaintiff's claims occurred in the County of Erie.

## PARTIES

3.      Plaintiff Gretchen Bailey ("Plaintiff") is a natural person who was and is a resident of the State of New York, County of Erie.

4.      Plaintiff began her employment with the Defendant Ellicott Development Company ("Ellicott Development") in May of 2014 as Defendants' Chief Financial Officer. Her duties included oversight, streamlining and auditing the financial operations of all of Defendants' companies and on-going businesses.

5.      Defendant Ellicott Development of Buffalo, LLC is the parent company of Defendant 10 Ellicott Square Court Corporation. Defendant Ellicott Development Company is the operating name of 10 Ellicott Square Court Corporation.

6.      Defendant William Paladino is the Chief Executive Officer of 10 Ellicott Square Court Corporation.

7.      Defendant Carl Paladino is the Chairman of the Board of Defendant Ellicott Development Company and was Plaintiff's direct supervisor.

8.      Jeff McArthur is Defendants' Financing Director/Financial Director and started his employment with Defendants at the same time as Plaintiff. McArthur's job duties included the banking and financial relationships of the Defendants.

9. Joel Sartori was the former Chief Financial Officer for Defendants and, at the time of Plaintiff's employment, was Defendants' Operational Billing Analyst.

10. Glenn Gawronski was Defendants' Senior Controller.

## MATERIAL FACTS

11. Plaintiff's position as Chief Financial Officer was supervisory and had dozens of subordinates to supervise. Plaintiff was also a head of a department for Defendants.

12. Plaintiff was qualified for her position as she is and was a Certified Public Accountant and a licensed attorney with an extensive and diversified background.

13. McArthur's position as Financing Director was non-supervisory and had no subordinates to supervise.

14. McArthur's background at the time he was hired by Defendants was twenty-five (25) years of prior experience with HSBC Bank.

15. McArthur was compensated with an annual salary of $195,000.00.

16. Gawronski's position as Senior Controller was supervisory and had approximately 15 subordinates. Gawronski reported directly to Plaintiff.

17. Gawronski was compensated with an annual salary of $120,000.00.

18. Both McArthur as the Financing Director and Gawronski as the Senior Controller were on the same executive level as Plaintiff as all three positions were considered Executive Cabinet Level positions of Defendant Ellicott Development.

19. Upon information and belief, Sartori was initially Defendants' Chief Financial Officer but his position was changed to one with fewer responsibilities in 2013. His compensation did not change until Plaintiff recommended that it be commensurate with his responsibilities in

approximately 2016 or 2017. Subsequently, Sartori was made Defendants' Operational Billing Analyst and, upon information and belief, Sartori's salary was increased.

20. In September of 2018 Sartori's responsibilities were limited to only lease audits.

21. Sartori's position as Operational Billing Analyst was one level below McArthur's, Gawronski's and Plaintiff's position in Defendant Ellicott Development's hierarchy.

22. Sartori's position as Operational Billing Analyst was non-supervisory and had no subordinates to supervise.

23. Plaintiff began her employment with Defendants in May of 2014 along with Jeff McArthur.

24. During her employment with Defendants Plaintiff has never received a written performance review despite asking that one be created and that her performance be evaluated.

25. However, Plaintiff was verbally praised for her performance and never received any form of discipline from Defendants.

26. In the summer of 2018 Plaintiff asked for a raise and was denied by Defendant Carl Paladino.

27. When Plaintiff made this request, she asserted that it was because she was aware that she knew other male employees were making more than she was.

28. After this request for a raise and denial, Carl Paladino began to act in a hostile manner towards Plaintiff.

29. In July of 2018 a female secretary for the Defendants voluntarily quit. Plaintiff suggested converting the full-time position to two part-time positions and hiring seasoned employees with experience in dealing with customers.

30. Defendant Carl Paladino responded to the suggestion adding that "presentation is a critical element" of the position.

31. Defendant Carl Paladino never commented on the presentation or other physical characteristics of male employees while Plaintiff was employed by Defendants.

32. In June of 2019 Plaintiff asked Defendants William and Carl Paladino to consider modification of the sick leave policy to increase the amount of sick leave for non-salaried employees.

33. Defendant Carl Paladino responded to Plaintiff's suggestion by stating that if Plaintiff were a union leader, she "probably would suffer the same fate as Jimmy Hoffa."

34. Plaintiff responded by stating that increasing the sick leave would benefit retention of non-salaried employees.

35. Defendant Carl Paladino responded by stating that a housecleaning may be in order. This was Defendant Carl Paladino indicating that he desired to terminate employees because of Plaintiff's suggestion.

36. In July of 2019 Plaintiff suggested to Defendants that rates for salary increases be standardized so as to maintain consistency across salary ranges and increases.

37. Defendant Carl Paladino responded to Plaintiff's suggestion by admonishing Plaintiff, stating words to the effect that Plaintiff should mind her own business and that Defendants were not some guilt-ridden, liberal, elite hypocrites and suffered no guilt from providing a livelihood for over 600 people.

38. In September of 2019 Plaintiff raised an issue regarding the calculation of a subordinate's sick leave when that employee took time off of work to care for her sick child.

39. Plaintiff stated that the employee's time couldn't be reduced since she was salaried and could not work overtime, and that reducing that employee's time would be a violation of the State and Federal Labor Laws.

40. Defendant Carl Paladino responded by again stating words to the effect that Plaintiff should mind her own business and that Defendant Carl Paladino and others considered Plaintiff "a bleeding heart socialist."

41. Plaintiff responded to Defendant Carl Paladino's statements by asserting that she was entitled to ask how sick days are handled, stated she didn't appreciate being called a socialist as it was not funny and was offensive, and reiterated her concern was about the proper procedure under the Labor Law and protecting the company from a lawsuit.

42. Defendant Carl Paladino responded by stating that Plaintiff seemed to be "touchy."

43. In late September of 2019 Plaintiff again addressed the issue of sick leave with respect to a different employee of the Defendants.

44. Plaintiff stated that the reduction of an employee's leave for taking a half day was not in compliance with the law.

45. Defendant Carl Paladino responded by stating that Trotsky, Lenin and Stalin were the Plaintiff's heroes.

46. In October of 2019 Plaintiff told Carl Paladino that she was paid much less than Jeff McArthur and asked for a raise.

47. On November 13, 2019 Defendants terminated Plaintiff.

48. On November 15, 2019 Defendant William Paladino as the Chief Executive Officer of 10 Ellicott Square Court Corporation tendered a severance offer to Plaintiff.

## FIRST AND SECOND CAUSES OF ACTION
### Discrimination based on Sex in Violation New York State Human Rights Law (Executive Law, Article 15), § 296(1) and Title VII of the Civil Rights Act of 1964

49. Plaintiff's employer discriminated against her with respect to her compensation because of her sex.

50. Specifically, Plaintiff was discriminated against as her salary was under the prevailing rate for other Chief Financial Officers and was significantly less than those with positions with similar or less responsibilities.

51. Plaintiff's salary was not based on seniority, merit, quantity or quality of production, or any other factor other than sex.

52. In theory, Jeff McArthur, as Defendants' Financing Director, was at the same level in the chain of command as the Plaintiff. Both McArthur and Plaintiff were members of the Defendants' Executive Cabinet Level of employees.

53. McArthur had no subordinates and no apparent supervisory authority based on Defendants' chain of command. Comparatively, Plaintiff was the head of a department and had dozens of subordinates who reported directly to her.

54. In practice, Plaintiff's position had far more duties than McArthur as the scope of her responsibility was greater than McArthur's.

55. Despite this, Plaintiff was paid $95,000.00 less than McArthur.

56. The midpoint starting salary for a Chief Financial Officer is $196,750.00. The average salary for a Financing Director is $184,000.00. Therefore, Plaintiff was underpaid by $96,750.00 and McArthur was overpaid by $11,000.00.

57. This continued for a period of four (4) years until Plaintiff's compensation increased to $125,000.00. She was thereafter underpaid by an amount of $71,750.00.

58. Similarly, Gawronski was, upon information and belief, paid more than Plaintiff for less responsibility than Plaintiff.

59. Specifically, upon information and belief, Gawronski made $20,000.00 more than Plaintiff despite being Plaintiff's subordinate.

60. Based on the foregoing allegations, Plaintiff states a cause of action for sex discrimination by Defendants.

### THIRD, FOURTH AND FIFTH CAUSES OF ACTION
**Retaliation in Violation New York State Human Rights Law (Executive Law, Article 15), § 296(1), Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act**

61. Plaintiff repeats each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

62. Executive Law § 296, Title VII and the ADA prohibit retaliation against an employee who engages in protected activity.

63. Plaintiff engaged in protected activity when she opposed discrimination by: 1) raising issues for various employees regarding the Defendants' tally of those employees' sick leave; 2) complaining to Defendants that their conduct violated various laws; 3) complaining to Defendant Carl Paladino that Plaintiff was paid less than her male comparator and asking for a raise.

64. As a result of Plaintiff's protected activity, Defendants subjected Plaintiff to ridicule, failed to respond to her complaints of discrimination, told the Plaintiff to mind her own business, refused to grant her requests for a raise, and ultimately terminated the Plaintiff.

65. Based on the foregoing allegations, Plaintiff states a cause of action for retaliation based upon protected activity under the New York State Human Rights Law, Title VII and the Americans with Disabilities Act.

## SIXTH, SEVENTH, AND EIGTH CAUSES OF ACTION
### Hostile Work Environment in Violation New York State Human Rights Law (Executive Law, Article 15), § 296(1), Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act

66. Plaintiff repeats each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

67. A plaintiff, to allege a hostile work environment claim under federal law must plead that "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003).

68. Under the laws of the State of New York, there is no such requirement for a claim to allege that the workplace was severe or pervasive.

69. Plaintiff was subjected to a Hostile Work Environment based on the forgoing conduct of the Defendants which included harassing statements and denial of her requests for raises or fair compensation.

## NINTH AND TENTH CAUSES OF ACTION
### Violation of the Equal Pay Act, 29 U.S.C. § 206(d) and New York Labor Law §194

70. Plaintiff repeats each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

71. In order to state a prima facie case of salary discrimination based on sex under the EPA, 29 U.S.C. § 206(d), a plaintiff must demonstrate that i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill,

9

effort, and responsibility; and iii) the jobs are performed under similar working conditions. <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1310 (2nd Cir. 1995).

72. As alleged in the foregoing paragraphs, Plaintiff was paid different wages than her peers of the opposite sex, that those comparators performed equal work on jobs requiring equal skill effort and responsibility, and that those jobs were performed under similar working conditions.

73. Plaintiff was denied the benefit of the protection of the Equal Pay Act and New York Labor Law §194.

## INJURY AND DAMAGES

74. As a result of the acts and conduct complained herein, Plaintiff suffered economic, emotional distress and other non-pecuniary losses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

a. Awarding Plaintiff compensatory damages for emotional distress;

b. Awarding Plaintiff economic damages of lost wages;

c. Awarding Plaintiff punitive damages;

d. Awarding Plaintiff attorney's fees, costs, and expenses;

e. Awarding Plaintiff a declaratory judgment that the Defendants engaged in discriminatory conduct under the applicable law or laws;

f. Prohibiting the Defendants from engaging in further discriminatory behavior; and

g. Awarding Plaintiff such other and further relief that this Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: Buffalo, New York
November 11, 2021

*[signature: Lindy Korn]*

Lindy Korn, Esq.
LAW OFFICE OF LINDY KORN PLLC
*Attorneys for Plaintiff*
Electric Tower
535 Washington Street, Ninth Floor
Buffalo, New York 14203
Telephone: (716) 856-5676
Facsimile: (716) 507-8475
lkorn@lkorn-law.com